UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GEORGE CURTIS CHAMBLISS,

    Plaintiff,

v.                                Case No: 6:18-cv-1074-Orl-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

    Plaintiff, George Curtis Chambliss, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Act Eligibility**

    The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB, and an application for SSI on June 26, 2014. (Tr. 210-22). In both applications, Plaintiff alleged a disability onset date of February 15, 2013. (Tr. 210, 219). His claims applications were denied at the initial level on August 25, 2014. (Tr. 119-21, 122-24). His claims were denied at the reconsideration level on October 23, 2014. (Tr. 130-34, 135-39). Plaintiff filed a request for hearing and an administrative hearing was held by Administrative Law Judge Douglas Walker ("the ALJ") on June 15, 2017. (Tr. 37-59). On August 28, 2017, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 13-28). Plaintiff requested review of the ALJ's decision, but the Appeals Council denied the request for review on May 1, 2018. (Tr. 1-6). Plaintiff initiated this action by Complaint (Doc. 1) on July 5, 2018.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 15, 2013, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairment: temporomandibular joint disorder (TMJ); neck, shoulder, and back pain status post rotator cuff repair; arthritis; gastritis; status post traumatic colonoscopy; hypercholesterolemia; prediabetes; hypertension; sleep apnea;

hernias; and posttraumatic stress disorder. (Tr. 15). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He would require work which is at most, very low semi-skilled in nature, which are tasks performed so frequently as to be considered routine, even though the tasks themselves might not be considered simple. He could lift and/or carry 10 pounds frequently and 20 pounds occasionally. He could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday. He could sit with normal breaks for a total of six hours in an eight-hour workday. He should avoid the frequent ascending and descending of stairs. He should avoid frequent pushing and pulling motions with his lower extremities (foot controls) within the aforementioned weight restrictions. The claimant, due to a mild moderate pain and medication side effects, should avoid hazards in the workplace such as unprotected areas moving machinery, heights ramps, ladders, scaffolding, and on the ground unprotected areas of holes and pits. He could perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling and crawling; but not the climbing of ropes or scaffolds, and of ladders exceeding six feet. He is limited to no more than occasional overhead reaching with the left upper extremity. The claimant has non-exertional mental limitation which frequently affect his ability to concentrate upon complex or detailed tasks, but he would remain capable of understanding, remembering, and carrying out the job instructions as defined earlier. He could make work-related judgments and decisions, respond appropriately to supervision, coworkers, and work situations, and deal with changes in a routine work setting.

(Tr. 19). At step four, relying on the testimony of a vocational expert, the ALJ found that Plaintiff is capable of performing his past relevant work as security guard and short order cook because such work does not require the performance of work-related activities precluded by Plaintiff's

RFC. (Tr. 27). The ALJ concluded that Plaintiff was not under a disability from February 15, 2013, the alleged onset date, through August 28, 2017, the date of the decision. (Tr. 28).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to formulate a RFC supported by substantial evidence; (2) whether the ALJ erred by failing to accord proper weight to the mental opinions of examining psychiatrist Dr. Zincone; and (3) whether the ALJ erred by failing to properly evaluate Plaintiff's credibility. The Court will address each issue in turn.

**a) Whether the ALJ erred by failing to formulate a RFC supported by substantial evidence.**

Plaintiff argues that the ALJ erred by finding that Plaintiff was capable of occasional reaching with the left upper extremity. (Doc. 19 p. 29). Plaintiff contends that there is no evidence from any treating or examining physician or therapist to support the ALJ's conclusion that Plaintiff could use his dominant left arm for overhead reaching up to one-third of the day. (Doc. 19 p. 30). In addition, Plaintiff argues that the ALJ failed to include limitations accounting for Plaintiff's PTSD. (Doc. 19 p. 32). In response, Defendant argues that substantial evidence supports the ALJ's evaluation of Plaintiff's ability to reach overhead and social functioning. (Doc. 19 p. 36-45).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether

Plaintiff can return to his past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e). An ALJ must consider all of a claimant's mental impairments which are sufficiently severe in combination with all of a claimant's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

Here, the Court finds that the ALJ provided substantial evidence for his assessment of Plaintiff's upper extremity. The ALJ noted that in January 2013, one month prior to his alleged onset date, Plaintiff's objective findings revealed no neurological deficits and no abnormalities in his extremities. (Tr. 21, 602). The ALJ noted that again in July 2013 and May 2014, after Plaintiff's alleged onset date, Plaintiff had normal motor strength and normal sensation. (Tr. 21, 723, 989, 1011). Plaintiff's neurological examination revealed no deficits. (Tr. 685). Plaintiff reported he worked as a volunteer at a homeless shelter. (Tr. 684). Plaintiff was advised to continue diet control and to exercise. (Tr. 687). The ALJ then noted that in September 2014, Plaintiff's objective examination revealed a normal range of motion and normal strength in his musculoskeletal system. (Tr. 20, 1157). While Plaintiff complained of pain, his treating source noted this pain was "post lifting 250 chairs." (Tr. 1159).

The ALJ noted that while Plaintiff's left shoulder MRI in June 2015 revealed a tendon tear (Tr. 20, 23, 1329, 1349), after physical therapy in July and August 2015 (Tr. 1493), Plaintiff's objective exam in October 2015 revealed his shoulder was non-tender and his motor strength and sensation were intact. (Tr. 20, 1329, 1349, 2859). The ALJ then noted that Plaintiff underwent rotator cuff repair and acromioplasty in January 2016. (Tr. 23, 1875). Following this procedure, Plaintiff underwent occupational therapy, during which Plaintiff reported continued pain but stated his strength and motion improved. (Tr. 23, 1815, 2281). The ALJ observed that in June 2016,

Plaintiff had decreased range of motion in his shoulder but was not in acute distress. (Tr. 21, 2260). Likewise, the ALJ noted that in July 2016, Plaintiff's back and musculoskeletal system were nontender with full range of motion and no motor or sensory deficits. (Tr. 20, 2850). Plaintiff had normal sensation, normal motor activity, and was in no acute distress. (Tr. 2850, 3075). During other examinations, Plaintiff had normal range of motion and no tenderness on musculoskeletal exam (Tr. 2825) and denied pain in his extremities (Tr. 2260). Likewise in August 2016, Plaintiff had full range of motion and normal strength in his extremities. (Tr. 2186). The ALJ then noted that in May 2017, Plaintiff's most recent diagnostic imagining revealed postsurgical changes from the left rotator cuff repair without follow-up complication. (Tr. 3238). As the ALJ discussed, Plaintiff's mild objective evidence did not support Plaintiff's allegations and instead supported the ALJ's finding that Plaintiff could perform occasional overhead reaching.

In his brief, Plaintiff notes that Dr. Schert found that Plaintiff had reduced strength in the left shoulder and opined that Plaintiff was unable to work over chest height using the left upper extremity. (Doc. 19 p. 30 citing Tr. 3205, 3212). Plaintiff fails to address, however, the ALJ's finding that Dr. Schert's opinion was entitled to only partial weight. (Tr. 25). The ALJ explained his reasoning as follows:

> Frederick W. Schert, M.D. opined on October 25, 2016 that the claimant was unable to work over chest height using the left upper extremity. He was unable to lift objects weight more than 1.5 pounds using the left upper extremity. Clerical as well as sedentary occupations are otherwise neither limited nor precluded. (Exhibit 45F/l 7-18). Partial weight is given to this opinion. While the overall conclusion that the claimant would not be precluded from all work is supported, the undersigned finds that the claimant is capable of performing work at the light exertional level with no more than occasional overhead reaching with the left upper extremity based on the treatment records and the reported activities of daily living inconsistent with total debilitation. Specifically, imaging revealed a full-thickness supraspinatus re-tear at the claimant's left upper extremity (Exhibit 34F/4-5) and there were findings of tenderness, decreased strength, limited range of motion, and positive impingement test at his left

> shoulder on physical examinations (Exhibits 21F, 34F/328, 45F/9-11, and 46F/28). However, on physical examinations, the claimant consistently appeared in no acute distress and his sensation and motor strength in his right upper extremity was intact. (Exhibits 6F/5-10, 40-43, and 45; 13F/52, 74; 14F/2-20; 19F/29; 34F/328 and 440; 36F/11, 29, and 38; and 46F/9). Additionally, he bathed and dressed independently, shopped, and performed household chores. (Exhibits 4E, 9E, and Testimony).

(Tr. 25-26).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Here, the ALJ provided good cause for according only partial weight to the opinion of Dr. Schert. Despite highlighting Dr. Schert's findings that conflict with the ALJ's RFC finding, Plaintiff has failed to show that the ALJ erred in the weight he accorded the opinion. Accordingly, the Court finds no error in the ALJ's RFC being less limited than Dr. Schert's as it pertains to limitation in the left upper extremity.

The Court notes that Plaintiff cites to additional evidence indicating his upper left extremity is more limited than found by the ALJ, for example that Plaintiff's orthopedic consultative examiner Dr. Buran indicated Plaintiff had no active range of motion at or above shoulder height with his left arm, that an emergency room doctor found that Plaintiff could not raise his left shoulder more than 90 degrees, that a VA treating physician found limited range in Plaintiff's left shoulder, and that a physical therapist found that Plaintiff had limited range in the left shoulder. (Doc. 19 p. 30). The Court does not find this evidence undermines the substantial evidence supporting the ALJ's decision. The relevant inquiry is not whether some evidence might support

greater limitations, but whether substantial evidence supports the ALJ's decision. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (even if evidence preponderates against ALJ's decision, court must affirm if substantial evidence supports it). While Plaintiff has cited to instances in the record that do not support the ALJ's RFC concerning Plaintiff's left upper extremity, Plaintiff has failed to show that the ALJ's findings were not supported by substantial evidence.

Likewise, despite Plaintiff citing to instances in the record in which he reported difficulties with his PTSD, the Court finds that Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's mental limitation findings. The record shows that prior to the onset date, Plaintiff presented with a good mood and affect. (Tr. 526). Then in September 2014, March 2015, June 2015, and October 2015 Plaintiff's psychiatric examination revealed that he was cooperative with normal judgment and appropriate mood and effect. (Tr. 1157, 1263, 1299, 1316, 2859). In June 2016, Plaintiff's objective mental examination revealed cooperative interpersonal skills, normal speech, normal/euthymic mood, intact attention, intact concentration, intact memory, normal/linear thought processes, no hallucinations, good judgment and insight, and normal orientation. (Tr. 2272). He had no depression. (Tr. 2260). Plaintiff's mental status examinations through 2017 showed he was well groomed with average demeanor, unremarkable motor activity, clear speech, unremarkable thought content, no hallucinations, logical and linear thought content, congruent affect, cooperative behavior, normal orientation, fair concentration and memory, average intelligence, and good insight and judgment. (Tr. 2108-09, 3176-79). He had cooperative interpersonal skills, normal speech, normal/euthymic mood, intact attention and concentration, intact memory, normal thought process, no hallucinations, good judgment and insight, and full orientation. (Tr. 2108-09). In fact, the ALJ noted that while Plaintiff occasionally

had a depressed mood, he consistently denied suicidal and homicidal ideations and demonstrated an appropriate appearance, adequate eye contact, clear speech, linear and logical thought process, cooperative behavior, average intelligent, and intact attention, concentration, memory, insight, and judgment. (Tr. 21, 1823, 1827, 1885 1888, 3021, 3180, 3192). The ALJ further supported his RFC finding when he noted that Plaintiff's treatment history did not involve hospitalization or aggressive treatment for his mental impairments. (Tr. 44).

As noted above, in conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin*, 894 F.2d at 1330 (11th Cir. 2002). The Court finds no reversible error in the ALJ's consideration of Plaintiff's RFC. Accordingly, the Court will affirm the RFC finding of the ALJ.

### b) Whether the ALJ erred by failing to accord proper weight to the mental opinions of examining psychiatrist Dr. Zincone.

Plaintiff argues that the ALJ erred by failing to provide good cause for rejecting the opinion of examining psychiatrist Dr. Zincone. Plaintiff contends that the ALJ's reason for rejecting Dr. Zincone's opinion, i.e., that it was "inconsistent with the treatment records and findings on mental status examination" is not supported by substantial evidence. (Doc. 19 p. 46). In response, Defendant argues that Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's rejection of Dr. Zincone's opinion. (Doc. 19 p. 50-51).

The record shows that Dr. Zincone opined that Plaintiff had moderate functional impairments from his posttraumatic stress symptoms, as he had difficulty keeping housing, maintaining consistent gainful employment, and partaking in consistent appropriate social interactions; and was seen to easily decompensate when dealing with routine stress. (Tr. 3047). Notably, Dr. Zincone opined that Claimant's PTSD caused clinically significant impairments in

social occupational and other important areas of functioning. (Tr. 3044). Additionally, Dr. Zincone opined that Plaintiff had difficulty in establishing and maintaining effective work and social relationships as well as difficulty in adapting to stressful circumstances, including work or a work-like setting. (Tr. 3044). He noted Plaintiff's reported history of military related trauma, as well as childhood sexual and physical trauma. (Tr. 3046). Dr. Zincone noted Plaintiff's reported abuse from fellow soldiers during his time in the military, and also reported being falsely (as the charges were dismissed) accused of raping his former stepdaughter. (Tr. 3037, 3038). Dr. Zincone also noted Plaintiff's reported flashbacks, nightmares, fast/intrusive thoughts of trauma, irritability, hypervigilance, as well as a history of avoiding crowds and being easily startled. (Tr. 3038). Furthermore, Dr. Zincone noted that Plaintiff was positive for recurrent, involuntary, and intrusive distressing memories of the traumatic events, recurring dreams, dissociative reactions, avoidance of external reminders, persistent/exaggerated negative beliefs, distorted cognitions, markedly diminished interest or participation in significant activities, feelings of detachment from others, and irritable behavior and angry outbursts. (Tr. 3043). Dr. Zincone further noted Plaintiff was positive for a depressed mood, anxiety, suspiciousness, and disturbances of motivation and mood. (Tr. 3044).

In his decision, the ALJ explained his reasoning in according Dr. Zincone's opinion little weight,

> John P. Zincone, M.D. opined on July 11, 2016 that the claimant had an occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. (Exhibit 32F/4). Dr. Zincone also indicated on July 11, 2016 that the claimant had moderate functioning impairment from his PTSD symptoms, as he has had difficulty keeping housing, he was unable to maintain consistent gainful employment, he had trouble with consistent appropriate social interaction, and he was seen to easily decompensate in dealing with routine stress. (Exhibits 32F/22 and

> 38F/20). Little weight is accorded to Dr. Zincone's opinions because they are inconsistent with the treatment records and findings on mental status examinations. For example, although there were some findings of a depressed, angry, and irritable mood, the claimant consistently denied suicidal and homicidal ideations and repeatedly displayed an appropriate appearance, cooperative behavior, clear speech, normal thought content, average fund of knowledge/intelligence, and intact attention, memory, insight, and judgment. (Exhibits 6F, 13F, 19F, 24F, 25F, 27F-32F, 34F, 44F, and 46F). Additionally, he has not undergone significant hospitalizations or emergency room treatment for symptoms related to a mental disorder during the period at issue.

(Tr. 26).

In this case, the Court finds no error in the weight accorded to Dr. Zincone. In his decision, the ALJ accorded the opinion little weight on the basis that Dr. Zincone's opinions are inconsistent with the treatment records and findings on mental status examinations. This finding is supported by substantial evidence. As noted above, the record shows that prior to the onset date, Plaintiff presented with a good mood and affect. (Tr. 526). Then in September 2014, March 2015, June 2015, and October 2015 Plaintiff's psychiatric examination revealed that he was cooperative with normal judgment and appropriate mood and effect. (Tr. 1157, 1263, 1299, 1316, 2859). In June 2016, Plaintiff's objective mental examination revealed cooperative interpersonal skills, normal speech, normal/euthymic mood, intact attention, intact concentration, intact memory, normal/linear thought processes, no hallucinations, good judgment and insight, and normal orientation. (Tr. 2272). He had no depression. (Tr. 2260). Plaintiff's mental status examinations through 2017 showed he was well groomed with average demeanor, unremarkable motor activity, clear speech, unremarkable thought content, no hallucinations, logical and linear thought content, congruent affect, cooperative behavior, normal orientation, fair concentration and memory, average intelligence, and good insight and judgment. (Tr. 2108-09, 3176-79). He had cooperative interpersonal skills, normal speech, normal/euthymic mood, intact attention and concentration,

intact memory, normal thought process, no hallucinations, good judgment and insight, and full orientation. (Tr. 2108-09). In fact, the ALJ noted that while Plaintiff occasionally had a depressed mood, he consistently denied suicidal and homicidal ideations and demonstrated an appropriate appearance, adequate eye contact, clear speech, linear and logical thought process, cooperative behavior, average intelligent, and intact attention, concentration, memory, insight, and judgment. (Tr. 21, 1823, 1827, 1885 1888, 3021, 3180, 3192).

As Defendant notes, Plaintiff's points to evidence that he argues supports Dr. Zincone's opinion but fails to demonstrate that the ALJ's reasoning is not supported by substantial evidence. The Court will not reweigh the evidence and, thus, affirms the ALJ's decision to accord little weight to Dr. Zincone's opinion.

### c) Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility.

Plaintiff argues that the record supports the limitations alleged by Plaintiff and that the ALJ's credibility finding was improper because the ALJ rejected Plaintiff's subjective complaints on the basis that they are not substantially supported by the evidence to the extent that Plaintiff would be precluded from all work activity. (Doc. 19 p. 53). In response, Defendant argues that the ALJ applied the correct standard and substantial evidence supports his credibility determination. (Doc. 19 p. 53-56).

The Eleventh Circuit three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir.

1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination may be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activates, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. § 404.1529.

In this case, the Court finds no error in the ALJ's consideration of Plaintiff's subjective complaints. As Defendant notes, Plaintiff only generally asserts that the ALJ's credibility finding is erroneous but does not point to any specific error that he believes the ALJ committed. Upon review of the ALJ's decision and medical evidence, it appears the ALJ properly evaluated Plaintiff's subjective complaints under the appropriate standard and determined that while Plaintiff's medically determinable impairments could reasonably expect to cause some of the alleged symptoms, his subjective allegations were inconsistent with his mild treatment record, conservative mental health treatment, and daily activities.

Plaintiff has failed to demonstrate that the ALJ committed reversible error in evaluating Plaintiff's subjective complaints. Accordingly, the Court will affirm the ALJ's credibility finding.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 3, 2019.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties